UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| LARRY GILMAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:12-cv-114-SEB-WGH |
| | ) | |
| MANNON L. WALTERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MAGISTRATE JUDGE'S
# REPORT AND RECOMMENDATION
# ON MOTION TO APPOINT A RECEIVER

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the referral by District Judge Sarah Evans Barker entered December 18, 2012 (Docket No. 53), for a report and recommendation on the Plaintiffs' and Nominal Defendants' Motion to Appoint a Receiver filed on September 17, 2012 (Docket Nos. 58, 60).  A Defendants' Response in Opposition to Plaintiffs' Motion to Appoint a Receiver and Motion to Strike the Affidavits of Edwin Sisam, John Murrin, Allan Loosemore and Bill Gallagher, Jr., were filed on February 25, 2013.  (Docket No. 70).  The Plaintiffs' and Nominal Defendants' Reply was filed on March 22, 2013.  (Docket No. 71).  The Magistrate Judge heard oral arguments on the motion and gave the parties an opportunity to present evidence on April 3, 2013.

## Legal Standard

The legal standard which this court must apply in deciding whether to appoint a receiver is stated in *J.P. Morgan Chase Bank, N.A. v. Heritage Nursing Care, Inc.*, 2007 WL 2608827 (N.D. Ill. September 6, 2007), *citing* 12 Wright & Miller § 2983. To be entitled to the appointment of a receiver, the movant must prove:

(1) fraudulent conduct on the part of the defendant;

(2) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;

(3) inadequacy of legal remedies;

(4) probability that harm to plaintiff by denial of appointment would be greater than injury to the defendant;

(5) plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property.

## Background Facts

Plaintiffs are individuals who have invested in one or more limited partnerships for the development of oil and gas. They bring this action against Mannon L. Walters ("Walters"), individually; Ivy Morris ("Morris"), individually; and related corporations controlled by Walters and Morris. Walters is the person who has allegedly sold all of the interests in these partnerships and is a General Partner and the Operating Partner of these partnerships.

## Issues

**Issue 1:     Have Plaintiffs demonstrated fraudulent conduct on the part of the Defendants?**

Although it is premature to determine that a fraud has been or is being conducted at this time, Plaintiffs have put forth sufficient evidence to suggest that Walters may have or may be engaging in fraudulent activity. I find this based on the following specific pieces of evidence before me:

(a)     Declaration of Edmond J. Martin ("Martin"): A very large early distribution represents a "red flag" indicative to Martin of a "Ponzi scheme."[1]  (Declaration at 4)

(b)     Martin finds the use of certain "historical performance" information to be a material misstatement of facts in a private placement memorandum such as the one at issue. (*See* Declaration at 4.)

---

[1] Had Martin been present in person and been "sworn on oath" by the court, his testimony would have been admissible. He has reasonable qualifications and performed some personal review of the materials. Martin's opinions relied upon by the Magistrate Judge would have been admissible evidence. Defendants argue that Martin's Declaration is not an affidavit (since not explicitly submitted under penalties of perjury) and does not comply with 28 U.S.C. § 1746 as an unsworn declaration, and therefore should not be considered as evidence. However, a review of appropriate authorities does not support the Defendants' position. Federal Rule of Civil Procedure 66 provides that the Federal Rules of Civil Procedure apply in an action in which the appointment of a receiver is sought. Federal Rule of Evidence 101 provides that the Federal Rules of Evidence apply to civil actions or proceedings. Federal Rule of Evidence 603 provides that a witness "must give an oath or affirmation to testify truthfully" … "in a form designed to impress that duty on the witnesses' conscience." 1 U.S.C. § 1 states "'oath' includes affirmation and 'sworn' includes affirmed." The Magistrate Judge concludes that the declaration language ("being first sworn on oath") sufficiently impresses upon Martin his requirement to testify truthfully, and renders the Declaration admissible evidence.

The admission of Martin's Declaration as evidence is admittedly a close question. In light of the ultimate outcome of this motion, the decision to consider this evidence does not harm the Defendants. This decision to consider Martin's Declaration for purposes of the request to appoint a receiver should not be construed as a ruling on the ultimate admissibility of Martin's Declaration at a later trial.

- (c) Martin reviewed Walters' website – which stated that as an operator, one of the Walter entities "had drilled 53 wells, with only four dry holes." Comparing this to records researched by Martin, at least 26 dry holes were drilled by Walter's entities, resulting in another material misstatement of fact. (Declaration at 3, 5).

- (d) At least one Plaintiff has requested access to the list of participants or the limited partners. Although the Agreement of Limited Partnership explicitly provides at section 4.03(b)(5) that participants are permitted access to all partnership records upon reasonable notice, Walters has refused to produce that list, citing to the "Privacy Act of 1974." Martin found, and the Magistrate Judge concludes, that the "Privacy Act of 1974" could not reasonably be believed to deny one limited partner access to a list of the other participants.[2] Based on Walters' failure to reasonably provide such a list, some inference of fraud may be drawn.

- (e) The Magistrate Judge's review of the "DISTRIBUTIONS BY PARTNERSHIP" attached as "Exhibit G" to Walters' Affidavit, in connection with Martin's own review found at page 4 of his Declaration, raises serious concerns about the manner in which distributions are made by the partnerships. While a finder of fact will not be compelled to reach the conclusion that a fraud has occurred, a comparison of the 2005 A1 and A2 distributions with the 2006 A and 2006 B distributions show that the early investors in the 2005 programs have received early and significant returns, while those who invested in 2006 have received virtually no returns. In comparison, the following chart summarizes these partnerships:

---

[2]In the fairly voluminous materials submitted to the court, the only reference to a "Privacy Act" by the Defendants that the Magistrate Judge can locate is a letter declining to produce the participants lists, which does not include a citation to any statute. The only citation referenced by the parties is 5 U.S.C. § 552, which deals with the requirements of federal agencies to make information available to the public. Defendants' counsel has not suggested any other "privacy statute" under which the identities of some partners in a limited partnership must be kept confidential from other limited partners.

|         | Investors[*] | Capital[**]   | Distributions[***] |
|---------|--------------|---------------|--------------------|
| 2005 A1 | 297          | $ 13,925,223  | $ 4,755,107.77     |
| 2005 A2 | 314          | 14,191,289    | 3,179,174.91       |
| 2006 A  | 438          | 22,314,412    | 1,310,174.91       |
| 2006 B  | 59           | 3,910,679     | 99,577.60          |
| 2007    | 31           | Unknown       | 104,353.50         |

———————————

[*]From Walters' Affidavit ¶ 31.
[**]From Martin's Declaration at 4.
[***]From Walters' "DISTRIBUTIONS BY PARTNERSHIP."

Specifically, those investors who invested in the 2005 partnerships received distributions almost immediately in 2006 and 2007 of substantial amounts and have continued to receive those amounts. In contrast, the 2006 investors – greater in number and amount of capital invested – received almost no distributions immediately, and the amounts of their distributions are exceptionally small in comparison to those who first invested. An inference that can be – but need not be – drawn is that capital contributions by those investing in 2006 or thereafter have been used in part to pay dividends to those investors who invested in 2005.[3]

The evidence cited above by the Magistrate Judge is sufficient to establish the first prong of the test for a receiver – that there is at least substantial evidence from which a finder of fact could conclude that a fraud has been or is taking place with respect to these partnerships.

———————————

[3]For the convenience of the District Judge, the "DISTRIBUTIONS BY PARTNERSHIP" is attached to this report as "Exhibit A." It seems unlikely to the Magistrate Judge that substantial immediate returns of $282,505, $400,000, and $401,037 could be paid to the investors in the 2005 partnerships within three months of the inception of partnerships in which wells must be drilled, oil or gas production commenced and sold, and start-up expenses incurred. The 2006 and 2007 partnerships established only one year (or two years) later received no returns in the first three months and virtually no returns at all for 18 months, at least.

**Issue 2:     Is there imminent danger of the property being lost, concealed, injured, diminished in value, or squandered?**

The Magistrate Judge concludes that the Plaintiffs have not established that there is imminent danger of the property being lost, concealed, injured, diminished in value, or squandered for the following reasons:

(1)  To the extent that the "property" possessed by the partnerships is the right to explore for oil and gas, there is insufficient evidence of imminent danger of the property being lost. Plaintiffs have not brought forward any leases that are in danger of lapsing. Plaintiffs have not brought forward any evidence that the Illinois basin from which the oil is being pumped is rapidly depleting or other specific evidence of large numbers of wells being drilled at this time, causing a rapid depletion rate. The Magistrate Judge can do no more than speculate as to loss of that property.[4]

(2)  To the extent that the "property" of the partnerships is to include the money which has been invested by the Plaintiffs in the partnerships, Plaintiffs have not made a sufficient showing that that is an imminent danger of funds being lost. Walters' Affidavit establishes, and Plaintiffs admit, that a representative of Larry Gilman reviewed books and records of the partnerships between October 31 and November 4, 2011. Plaintiffs have failed to come forward by way of affidavit or other admissible evidence from that investigation or any other investigation that there is specific evidence of commingling of funds, improper bank account practices, or payments of funds specifically for the personal debts or obligations of Walters,

---

[4]The Magistrate Judge concludes that the report of Bill Gallagher, Jr., is not admissible because it is not under oath and contains significant hearsay. However, even if admissible for these purposes, it does not conclusively establish *imminent danger* of the ability to produce oil and natural gas. The Magistrate Judge does express some concern about Gallagher's finding that perhaps only seven of 32 wells were in production at a particular point in time in the operation of these partnerships. However, this information is based on hearsay as well. Whether ultimately admissible evidence will support those factual conclusions remains to be seen. If facts to support that representation are correct, that may also be evidence of misrepresentations that go to the issue of fraud.

>   Ivy, or otherwise being used outside of payments for the exploration of oil and gas.

**Issue 3:   Have Plaintiffs demonstrated that there is an inadequacy of legal remedies?**

The Magistrate Judge concludes that Plaintiffs have failed to show that legal remedies are inadequate. Specifically:

>   (1)   Because Plaintiffs have not demonstrated by admissible evidence the dissipation of any assets other than their investment, the nature of the relief which they must seek will come in the form of a money judgment for the return of their investment and any of their damages or punitive damages that a finder of fact may deem appropriate.
>
>   (2)   Under FED. R. CIV. P. 64, at the commencement of and throughout an action every remedy that is available under the law of the state where the court is located can be applied, which would allow seizing of personal property to secure satisfaction of a potential judgment. Indiana Rule of Trial Procedure 64(B)(3) and other portions of that rule provide for prejudgment attachment or garnishment in favor of a plaintiff suing upon a claim for money, whether founded on contract, tort, equity, or any other theory, and whether it is liquidated, contingent, or unliquidated. While it is unclear to the Magistrate Judge that this remedy is practical, it nevertheless is a legal remedy that is available to Plaintiffs, and there has been no explicit showing by the Plaintiffs that those remedies are not practical or available.

**Issue 4:   Have Plaintiffs established that the probability that harm to Plaintiffs by denial of the appointment would be greater than the injury to Defendants?**

Plaintiffs have failed to show that the probability that harm to Plaintiffs would be greater than the injury to the Defendants for the following reasons:

>   (1)   Plaintiffs have not presented any evidence which demonstrates the amount of money they personally have invested in any of the partnerships. The Magistrate Judge is therefore unable to

-7-

    establish the degree to which these particular Plaintiffs have suffered a loss of their investments.

 (2) Plaintiffs have not put forward any evidence with respect to the costs that would be engendered by the appointment of a receiver. Without any such information, the Magistrate Judge is unable to establish that the probability of harm to Plaintiffs would be greater than the costs of the receiver to Defendants.

**Issue 5: Plaintiffs' probable success in the action and the possibility of irreparable injury to Plaintiffs' interests in the property.**

  As described in Issue 1 above, it is likely that Plaintiffs will prevail on their claim for declaratory judgment that the Privacy Act at 5 U.S.C. § 552(a) does not relate to a contract between the private parties. Plaintiffs, therefore, will likely prevail on their contractual right to obtain the participants lists and their right to call a partnership meeting. (Plaintiffs' Complaint, Count I). In addition, there is a significant likelihood that Plaintiffs may prevail on the breach of contract claim at Count III with respect to their claim to be allowed to review participants lists and books and records. The facts have not yet sufficiently been developed to establish Plaintiffs' probable success with respect to the remainder of the counts of the Complaint. However, as described in Issues 2 and 3, Plaintiffs have failed to demonstrate irreparable injury to their interests in the property.

### Conclusion and Recommendation

  While Plaintiffs have brought forward some evidence to show fraudulent conduct and a likelihood of success with respect to certain counts of the Complaint, Plaintiffs have failed to carry the heavy burden necessary with respect

to the other aspects of the *Morgan* test. The Motion to Appoint a Receiver should be denied.[5]

**SO RECOMMENDED** this 29th day of April, 2013.

                                                */s/ William G. Hussmann, Jr.*
                                                William G. Hussmann, Jr.
                                                United States Magistrate Judge
                                                Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**

---

[5] The Agreement of Limited Partnership which appears to apply to all of the limited partnerships addresses "PARTICIPANT ACCESS TO RECORDS" at 4.03(b)(5); "PARTICIPANTS LISTS" at 4.03(b)(7); and "PROCEDURE FOR A PARTNERSHIP MEETING" at 4.03(c)(1). Specifically, a meeting may be called by the Managing General Partner or participants whose units equal ten percent or more of the total units for any matter for which participants may vote. The Magistrate Judge would strongly recommend that Walters and his entities, as the Managing General Partner, call a participants meeting to address the concerns of Plaintiffs herein. A full and frank discussion of the partnership records at such a meeting may go a long way to resolving the disputes between the parties. Such a meeting would clearly occur much quicker and with much less expense than extensive private arbitration proceedings through the AAA and/or potentially additional federal court litigation. At such a meeting, a topic of conversation might include the willingness of the Managing General Partner or other investors or limited partners to repurchase the units of the Plaintiffs who are unhappy with their investment.