UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

LARRY GILMAN,                              )
*et al.*                                   )
                          Plaintiffs,      )
                                           )
               vs.                         )        3:12-cv-00114-SEB-WGH
                                           )
MANNON L. WALTERS individually,            )
*et al.*                                   )
                          Defendants.      )

## ORDER ON PENDING MOTIONS

This cause is before the Court on Defendants'[1] Motion to Stay Arbitration [Docket No. 116], filed on June 2, 2014.[2] Because we have ruled herein on the issues raised by Defendants, there is no need to stay the arbitration. Accordingly, Defendants' Motion to Stay is DENIED AS MOOT. Our rulings on the issues raised by Defendants are set forth in detail below.

## Procedural and Factual Background

Plaintiffs are investors in one or more of five separate oil and gas limited partnerships ("LP") through their execution of a written Subscription Agreement. Each LP is a separate investment entity governed by a limited partnership agreement ("LPA"). Each LPA contains an identical dispute resolution provision, which states, "Any

_____

[1] "Defendants" include all named Defendants except MLW, Inc. and John and Jane Does I-X.
[2] Defendants also filed a Motion for Oral Argument [Docket No. 119] on June 2, 2014. However, because we are able to rule on the motion based solely on the parties' briefing, Defendants' Motion for Oral Argument is DENIED.

controversy or claim arising out of or relating to this Agreement shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules …." (the "Arbitration Clause").  On January 7, 2012, Plaintiffs filed a consolidated arbitration demand with the American Arbitration Association ("AAA") (the "Demand") alleging various claims, including, *inter alia* breach of contract, deceptive trade, and RICO.  The Demand filed by Plaintiffs included as respondents both signatories and non-signatories to the LPAs.  On April 10, 2012, the AAA claims administrator instructed Plaintiffs to amend their consolidated demand to "file separate arbitrations for their claims arising under each of the contracts containing arbitration clauses."

On January 27, 2012, shortly after they filed the original Demand with the AAA, Plaintiffs also filed the instant lawsuit, explaining that their judicial complaint was to "toll the statute of limitations and seek a declaratory judgment that the matters contained herein should be properly decided by arbitration."  Compl. ¶ 55; First Am. Compl. ¶ 56. Thereafter, on March 20, 2012, Plaintiffs filed a Motion to Stay Federal Proceedings and Compel Arbitration.  On January 31, 2013, Plaintiffs' motion was denied, based on the ruling of the Magistrate Judge as follows:

> Defendants have appeared in the AAA proceeding, filed a response, and
> that matter may proceed upon the filing of an Amended Demand.  Because
> the Defendants have not failed, neglected, or refused to arbitrate under
> written agreement, Plaintiffs are not entitled to relief under 9 U.S.C. § 4.

Dkt. No. 68.

On September 5, 2013, Defendants filed a Motion to Dismiss for Lack of Prosecution or, in the Alternative, Motion to Compel Arbitration based on Plaintiffs' failure to file an amended demand for arbitration. That prompted Plaintiffs the very next day to file a nearly identical consolidated arbitration demand with the AAA, which respondents countered with a nearly identical jurisdictional challenge filed on September 9, 2013. On October 2, 2013, the AAA case administrator again informed Plaintiffs that they must file separate demands for each contract containing an arbitration clause. On November 27, 2013, we granted Defendants' motion to compel arbitration, and ordered Plaintiffs to comply with the AAA case administrator's instructions on the grounds that it was the arbitrator's responsibility to determine the consolidation question.

On December 19, 2013, Plaintiffs complied with the case administrator's directive by filing five separate arbitration demands, pursuant to the arbitration provision in each of the LPAs, thereby creating five separate arbitration cases to be administered by the AAA. In each of the five cases, Plaintiffs named the respective LP and managing general partner as the sole respondents, consistent with the AAA case manager's instructions. That same day Plaintiffs also filed an Objection to Directive to Sever the Amended Statement of Claim in each of the five cases. The respondent in each of the five cases thereafter filed an objection to AAA jurisdiction.

The AAA appointed Howard Suskin ("Arbitrator Suskin") in AAA Case No. 52 198 Y 00012 12 pursuant to the 2005A1 LPA (the "2005A1 LPA Case"). The parties requested selection of a panel possessing specific expertise in the oil and gas industry in

3

the 2005A2 LP case, the 2006 A LP case, the 2006B LP case, and the 2007A LP case (the "Other Four Cases"). The AAA complied with that request by providing panels in each of the Other Four Cases, from which an arbitrator was appointed after the parties had an opportunity both to strike and rank the individual panel members. Preliminary hearings were held with arbitrators in four of the cases and deadlines were set in those four cases to address pending objections. A preliminary hearing was scheduled in the fifth case but it was subsequently postponed indefinitely by the AAA.

On April 14, 2014, Arbitrator Suskin granted Plaintiffs' Objection to Sever in the 2005A1 LP Case. In that order, Arbitrator Suskin held that "Mannon L. Walters, LLC … is the signatory to the [2005A1] Limited Partnership Agreement (LPA), is subject to the LPA's arbitration clause [and] … the LPA's arbitration clause … encompasses each of Claimants' claims as currently pleaded against Mannon L. Walters, LLC." Docket No. 118-1 at 1. Arbitrator Suskin allowed Plaintiffs 30 days within which to file a "Consolidated Amended Statement of Claim" in order to add new parties if they wished, instructing Plaintiffs to "plead with specificity the factual and legal bases upon which each additional party is an "Affiliate" of Mannon L. Walters, LLC, as that term is used in the LPA, and the factual and legal bases upon which AAA has jurisdiction over each such Affiliate." *Id.* at 2. Arbitrator Suskin noted that consolidation "would serve the interests of arbitral economy and also would serve the interests of all parties by conserving their resources, at least through the discovery and pre-hearing phases" but stated that if Mannon L. Walters, LLC "wishes to revisit the issue of severance for purposes of the

final arbitration hearing, it may do so by way of motion at the conclusion of the discovery phase of this proceeding." *Id.* at 3.

Prior to any claimant filing a consolidated amended demand, on April 16, 2014, Arbitrator Suskin entered an order allowing discovery encompassing matters relating not only to the 2005A1 LP Case but also to the Other Four Cases. On April 25, 2014, Plaintiffs in the 2005A1 LP Case served a Request for Production to Mannon L. Walters, LLC n/k/a Mannon Oil, LLC ("Mannon Oil") seeking documents relating, in part, to the Other Four Cases. That same day, Plaintiffs filed a Second Amended Statement of Claim (the "Amended Demand") in the 2005A1 LP Case, which added all parties, non-parties, and claims set forth in the Other Four Cases. Respondents named include the following: Mannon L. Walters, individually; Ivy Morris, individually; Mannon L. Walters, Inc.; MLW, Inc.; MLW, LLC; Mannon L. Walters LLC n/k/a Mannon Oil, LLC; Mannon Oil of Tennessee, LLC; F.E. Moran Oil Company; and John and Jane Does I-X.[3] The Amended Demand asserts fourteen counts for relief based on the LPAs, the Subscription Agreements, the Drilling and Operating Agreements, state common and statutory law, and federal statutory law.

On April 29, 2014, Mannon Oil, as managing general partner of the 2005A1 LP, filed a Motion to Correct Error in the 2005A1 LP Case, objecting to Arbitrator Suskin's April 14, 2014 Order permitting Plaintiffs to file a Consolidated Amendment of Claims.

---

[3] Out of these individuals/entities, the only signatory on the LPAs is Mannon L. Walters LLC n/k/a Mannon Oil, LLC ("Mannon Oil").

Arbitrator Suskin denied Mannon Oil's motion on May 15, 2014, holding in pertinent part as follows:

1. From the start of this proceeding, Claimants have expressed their desire to have their disputes concerning five limited partnerships adjudicated through the assertion of a single consolidated Statement of Claim, which is what they originally filed with the AAA and have since amended. They note that a number of the individual Claimants are limited partners in more than one of the limited partnerships at issue, and that the non-nominal Respondents are the same with respect to each limited partnership. Further, Claimants allege that the limited partnerships "are inherently inseparable and inexorably intertwined" and were created and operated by Respondents as a "single continuous enterprise," making adjudication in a single proceeding appropriate. It is undisputed that the arbitration clauses in each of the five limited partnership agreements provide for arbitration under the AAA Commercial Rules, and thus there is not any basis to contend that the AAA lacks jurisdiction over Claimants' claims.

2. In the Motion to Correct Error, Respondent notes that it was not until 2013 that the AAA Rules expressly permitted consolidation and joinder of arbitrations, and Respondent contends that the April 14, 2014 Order erred because the original action was filed in January 2012 and governed by the 2009 AAA Rules, which were silent as to consolidation of arbitrations. …

3. However, Respondent's arguments about consolidation of arbitrations and the 2009 rules and the 2013 rules simply are not apt. A fundamental misconception in Respondent's motion is its incorrect premise that the April 14, 2014 Order consolidated or joined arbitrations: or, in Respondent's words, that the Order was "an attempt to exercise jurisdiction over cases to which [the arbitrator] has not been appointed" and that the Order "unilaterally consolidate[d] distinct cases." But that is not what the Order did. The Order merely allowed Claimants to file an Amended Consolidated Statement of Claim in which they asserted, in this proceeding, all their claims against Respondents. The Order did not purport to consolidate this arbitration with any other cases. Nor did the Order purport to take any other action with respect to any other case. …

4. As was pointed out previously, there is good reason to permit Claimants to bring their claims in one proceeding, and doing so will benefit Respondents as well. Consolidating substantially similar claims against the same respondents that raise a substantial commonality of factual and legal issues would serve the interests of arbitral economy and also would serve the interests of all parties by conserving their resources, at least through the discovery and pre-hearing phases. But in the event that further developments prove otherwise, I also have provided Respondents the opportunity to revisit the issue of severance of the claims for purposes of the final arbitration hearing, at the conclusion of the pre-hearing phase of this proceeding, if they wish to demonstrate that bifurcated hearings make more sense For now, however, the proper course is for Claimants' Second Amended Statement of Claim to be adjudicated as pleaded through at least the pre-hearing stages, and for Respondents to answer and assert their defenses without further delay.

5. With respect to Respondent's remaining objections, I have reviewed again the arbitration clauses at issue and the case law presented by the parties. The broad wording of the LPA's arbitration clause ("Any controversy or claim arising out of or relating to this Agreement") encompasses each of Claimants' claims as currently pleaded and therefore the objections are overruled.

Dkt. No. 118-5 at 1-4 (internal citations omitted).

Also on May 15, 2014, Mannon Oil filed its Answering Statement to the Amended Demand asserting its continuing objection to AAA jurisdiction on the basis that the Court is to decide arbitrability issues and that the majority of claims asserted against it were not arbitrable because they do not fall within the scope of the Arbitration Clause. On the same day, certain other respondents named in the Amended Demand filed an Objection to AAA Jurisdiction arguing that the Court must decide arbitrability issues. Plaintiffs filed a motion for abatement in three of the other arbitration cases. The arbitrators in each of those cases entered orders staying their respective case pending the resolution of the issues in the 2005A1 LP Case.

On May 30, 2014, Arbitrator Suskin entered an order following a telephonic pre-hearing conference at which Defendants indicated that they would be filing jurisdictional objections with this Court, holding that "the AAA will defer ruling on the jurisdictional objections with respect to the respondents other than Mannon L. Walters, LLC that have been filed with the AAA until the United States District Court has an opportunity to consider those objections." Dkt. No. 120-9 at 1-2. On June 2, 2014, Defendants filed the instant Motion to Stay Arbitration requesting that we stay the 2005A1 LP Case until we determine: (1) which claims in the Amended Demand against Mannon Oil, as managing general partner of the 2005A1 LP, fall within the scope of the Arbitration Clause and are subject to AAA jurisdiction; and (2) whether certain non-signatories, including Mannon Oil as managing general partner of the LPs in the Other Four Cases, are bound by the Arbitration Clause in the 2005A1 LPA and whether any claims in the Amended Demand fall within its scope.

## Legal Analysis

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citations omitted). The threshold question of arbitrability, to wit, whether the parties have submitted a particular dispute to arbitration, is generally to be decided by the court, not the arbitrator, unless the parties "'clearly and unmistakably provide otherwise.'" *Id.* (quoting *AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649 (1986)).

8

It is undisputed that the arbitration clause in each of the LPAs at issue here explicitly states that arbitration is to be administered by the AAA under the AAA's Commercial Arbitration Rules; thus, the AAA's rules are incorporated into the arbitration agreement. *See Dunston v. R.H. Love Galleries, Inc.*, No. 07 CV 5113, 2008 WL 2339564, at *2 (N.D. Ill. June 4, 2008) ("[W]here the parties agree to arbitration pursuant to the rules of the [AAA], the parties incorporate the AAA's rules into the arbitration agreement.") (citing *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272 (7th Cir. 1976)). Rule 7(a) of the AAA Rules expressly grants to the arbitrator "the power to rule on his or her jurisdiction." Although neither the Supreme Court nor the Seventh Circuit has explicitly ruled on this issue, a number of our sister circuits have held that by incorporating the AAA rules into their agreement, parties evidence their "clear and unmistakable" intent to allow the arbitrator to decide the question of arbitrability. *See Fadal Machining Centers, LLC v. Compumachine, Inc.*, 461 Fed. App'x 630, 632 (9th Cir. 2011); *Fallo v. High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 211 (2d Cir. 2005); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *see also Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 132 (D.D.C. 2013) (collecting federal appellate and district court cases). Other district courts in our circuit have reached the same conclusion. *See e.g.*, *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, __ F. Supp. 2d ___, 2014 WL 2795827, at *4 (N.D. Ill. June 17, 2014); *Corrigan v. Domestic Linen Supply Co.*, No. 12 C 0575, 2012 WL 2977262, at *2 (N.D. Ill. July 20, 2012);

*Yellow Cab Affiliation, Inc. v. New Hampshire Ins. Co.*, No. 10-cv-6896, 2011 WL 307617, at *4 (N.D. Ill. Jan. 28, 2011).

Having carefully reviewed the applicable cases, we are persuaded by the majority view[4] and thus hold that the arbitration provision's incorporation of the AAA Rules is a clear and unmistakable expression of intent by the contracting parties to leave the question of arbitrability to an arbitrator. Accordingly, as a signatory to all five LPAs, Defendant Mannon Oil has clearly indicated its intent to confer on the arbitrator the authority to determine his own jurisdiction, including the power to resolve any "objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Arb. R. 7(a). Thus, Mannon Oil cannot now disavow its prior agreement to arbitrate issues of arbitrability, including the determination of which claims alleged in the Amended Demand fall within the scope of the arbitration agreement as well as whether it is bound by the arbitration clause in the 2005A1 LPA as managing partner of the Other Four Cases. *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011) ("'Questions of arbitrability'" is a term of art covering 'dispute[s] about whether the parties are bound by a given arbitration clause' as well as 'disagreement[s]

---

[4] We note that our colleague Chief Judge Young reached the opposite conclusion in *Masco Corp. v. Prostyakov*, No. 1:09-cv-0500-RLY-TAB, 2009 WL 3390490, at *4 (S.D. Ind. Oct. 19, 2009). However, given the current state of the applicable case law and the overwhelming majority of courts holding that incorporation of the AAA rules in a valid arbitration agreement constitutes "clear and unmistakable" evidence of the parties' intent to have the arbitrator rule on issues of arbitrability, we believe the Seventh Circuit would agree with the majority view.

about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'") (quoting *Howsam*, 537 U.S. at 83-85).[5]

This does not end our inquiry, however, because, with the exception of Defendant Mannon Oil, the remaining respondents named in the Amended Demand are not signatories to any of the LPAs. Thus, there is a question as to whether the remaining Defendants are bound by any of the arbitration agreements at all. If they are not bound by the arbitration agreements at issue, they clearly could not have agreed to arbitrate arbitrability. This foundational question, to wit, whether particular parties agreed to arbitrate their disputes at all, is different than the question of whether certain claims fall within the scope of an arbitration provision. It is well-established that "arbitration is contractual by nature – a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Zurich Am. Ins. Co. v. Watts Indus. Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (internal citations and quotation marks omitted). It is also well-settled that "where the dispute at issue concerns contract formation, the dispute is

---

[5] Additionally, with regard to Defendant Mannon Oil's argument that Arbitrator Suskin exceeded his authority by allowing Plaintiffs to file an Amended Demand in which they name Mannon Oil not only in its capacity as managing general partner of the 2005A1 LPA but also in its capacity as managing general partner of the Other Four Cases as well, we previously ruled in this case that any issues related to consolidation must be resolved by the arbitrator, not the court. Unlike the non-signatories, it is clear that Mannon Oil agreed to arbitrate issues related to each of the LPs as it is a signatory on all five of the LPAs at issue. Thus, the arbitrator has the authority to determine the manner in which the claims against Mannon Oil are to be addressed in arbitration. Accordingly, we are not persuaded by Mannon Oil's argument that Arbitrator Suskin exceeded his authority by allowing Plaintiffs to file, at least for purposes of discovery, an amended demand asserting all of their claims against Mannon Oil as this is a decision that we previously ruled was the arbitrator's to make. We note that Arbitrator Suskin made clear that his decision to allow the filing of the Amended Demand could be revisited, if necessary, by Mannon Oil following discovery.

generally for courts to decide." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 296 (2010) (citations omitted). This makes sense because "as arbitration depends on a valid contract[,] an argument that the contract does not exist can't logically be resolved by the arbitrators (unless the parties agree to arbitrate this issue after the dispute arises)." *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001); *see also Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010) (holding that the district court should address "the narrow question whether a contract existed between the parties").

Thus, we turn to the issue of whether the non-signatories included by Plaintiffs in their Amended Demand are bound by the arbitration clause in the 2005A1 LPA despite their not having signed the contract. Federal courts generally apply state-law principles governing the formation of contracts to determine whether parties have agreed to arbitrate a matter. *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005). However, where, as here, a valid contract undisputedly exists, federal courts look to applicable federal precedent to determine whether the arbitration clause applies to a non-signatory. *See Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004 n.4 (N.D. Ill. 2001) (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000)). The Seventh Circuit recognizes "five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich Am. Ins. Co.*, 417 F.3d at 687. Plaintiffs argue that all but the last of

these doctrines apply in this case.  Additionally, Plaintiffs contend that all of the non-signatories are bound to arbitrate as "affiliates."  We address each of these arguments in turn below.

## I.     Affiliates

Plaintiffs first maintain that all of the non-signatories are "affiliates" of Mannon Oil, and thus are bound by the arbitration clauses contained in the LPAs.  Mannon Oil is the "managing general partner" and a signatory to the LPAs.  Plaintiffs contend that because the definition of the "managing general partner" under the LPAs includes "affiliates," any claim against the "managing general partner" necessarily includes claims against its "affiliates" thereby making them subject to arbitration.  "Affiliates" is defined in Article II, paragraph 3 of the LPAs as follows:

- Any person directly or indirectly owning, controlling, or holding with power to vote 10% or more of the outstanding voting securities of the [General Managing Partner];

- Any person 10% or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the [General Managing Partner];

- Any person directly or indirectly controlling, controlled by, or under common control with the [General Managing Partner];

- Any officer, director, trustee or partner of the [Managing General Partner]; and

- If the [Managing General Partner] is an officer, director, trustee or partner, any person for which the person acts in any such capacity.

Plaintiffs fail to demonstrate how any of the non-signatories falls within this definition. They have designated no evidence establishing that Mannon Oil owns or controls any other Defendant. Nor is there evidence in the record before us that any of the non-signatories other than Mannon L. Walters, Inc. own Mannon Oil. While there is evidence that Mannon L. Walters, Inc. owns Mannon Oil, that fact alone is insufficient to bind Mannon L. Walters, Inc. to the arbitration agreement as it is well established that "[a] corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement." *Zurich Am. Ins. Co.*, 417 F3d at 688 (citation omitted). "[A] mere parent-subsidiary relationship does not create the relation of principal and agent or alter ego between the two." *Id.* (quotation marks and citation omitted).[6]

Plaintiffs allege that Mannon L. Walters and Ivy Morris are "officers" and have "direct control" of Mannon Oil and its affiliates, including MLW, Inc., Mannon L. Walters, Inc., Mannon L. Walters, LLC, and FE. Mannon Oil Company. But Plaintiffs have named Mr. Walters and Ms. Ivy in their individual, not their management or official capacities. Given that neither Mr. Walters nor Ms. Ivy personally agreed to arbitrate by signing any of the LPAs in their individual capacities, their status as officers of Mannon Oil without more is insufficient to bind them personally to the 2005A1 LPA. *See, e.g.*, *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 318-19 (5th Cir. 2011) (holding "affiliate" language alone insufficient to bind individual capacity defendants to arbitration

---

[6] Defendants concede that Mannon L. Walters, Inc. has limited partnership interests in the 2005A1 LP and is thus bound by the 2005A1 LPA as an investor, however.

agreement signed by corporation).  For these reasons, Plaintiffs' "affiliates" argument fails.

## II.    Assumption

Plaintiffs next contend that the non-signatories are bound by the arbitration agreements pursuant to the assumption doctrine.  A non-signatory may be bound by an arbitration clause "if its subsequent conduct indicates that it is assuming the obligation to arbitrate."  *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 85 (3d Cir. 2010) (citation omitted).  Plaintiffs argue that the non-signatories here have evidenced their intention to be bound by the arbitration clause both by filing their own motion to compel arbitration as well as through their participation in the arbitration, namely, by appearing in the arbitration, filing a response to Plaintiffs' original demand, and filing jurisdictional objections.  Such actions are legally and factually insufficient to satisfy the doctrine of assumption, however.

It is true that all Defendants, including the non-signatories, filed a motion to dismiss or in the alternative to compel arbitration with this Court.  In their motion, however, Defendants requested that Plaintiffs be ordered to file separate amended arbitration demands consistent with the AAA's case manager's instructions, which directed Plaintiffs to file separate amended demands for each LPA, naming as respondents in each demand *only the signatories* to that particular contract.  We cannot conclude based on the fact that the non-signatories joined a motion requesting that the

Court compel arbitration *only as to the signatories* suffices as evidence of the non-signatories' intent to assume an obligation of arbitration.

Nor does the case law support Plaintiffs' contention that the fact that the non-signatories filed jurisdictional objections in the arbitration constitutes an assumption to arbitrate. Indeed, the opposite is true. *See, e.g.*, *Hospira, Inc. v. Therabel Pharma N.V.*, 2013 WL 3811488, at *12-13 (N.D. Ill. July 19, 2013) (holding that the fact that non-signatory expressly objected to arbitration evidenced that it had not assumed the obligation to arbitrate). Defendants have consistently objected to any filing related to non-signatories both in the arbitration and in the court proceeding and have repeatedly argued that the arbitrability issue is one for the Court to decide. Given these circumstances, we cannot find that any of the non-signatories before us has assumed the obligation to arbitrate under the 2005A1 LPA based on their actions, nor have any waived their right to have the Court resolve this jurisdictional issue.

## III.  Agency

Plaintiffs next contend that Mannon L. Walters and Ivy Morris are bound by the arbitration agreements in their individual capacities as agents of Mannon Oil. However, it is well-established that "[s]igning an arbitration agreement as agent for a disclosed principal is not sufficient to bind the agent to arbitrate claims against him personally." *Flink v. Carlson*, 856 F.2d 44, 46 (8th Cir. 1988); *accord DK Joint Venture 1*, 649 F.3d at 314-15; *Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 559-560 (5th Cir. 2011); *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 446 (3d Cir. 1999) (all holding that only

the defendant corporation and not its individual officers were bound by an arbitration agreement because the officers had not personally agreed to arbitrate).  This conclusion is consistent with Section 6.01 of the Restatement (Third) of Agency, which provides: "When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise."

Here, there is no indication that Mannon Oil was empowered to contract on behalf of either Mr. Walters or Ms. Ivy in their individual capacity.  Without evidence establishing that Mr. Walters or Ms. Ivy personally agreed to arbitrate, they are not bound by the arbitration clause contained in the 2005A1 LPA under well-settled agency principles.[7]

## IV.    Estoppel

Plaintiffs maintain that the non-signatory Defendants should be estopped from attempting to avoid arbitration because they have knowingly derived a benefit from the contract in which the arbitration clause is contained.  "A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the

---

[7] Plaintiffs cite the Third Circuit's decision in *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993), for the proposition that Mr. Mannon and Ms. Morris are bound by the arbitration clause because they are "agents, officers, and control persons."  However, *Pritzker* is distinguishable because there, unlike here, it was the non-signatory that sought arbitration against a signatory.  Caselaw makes clear that "it matters whether the party resisting arbitration is a signatory or not."  *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003) (citation omitted).  This critical distinction renders *Pritzker* inapplicable to the situation before us.

arbitration clause." *Zurich v. Am. Ins. Co.*, 417 F.3d at 688 (citations omitted). In order to be bound under this theory, the non-signatory party must receive a "direct benefit" from the contract containing the arbitration provision. *See id.* at 688. Benefits are direct "when arising specifically from the unsigned contract containing the arbitration clause" or "when specifically contemplated by the relevant parties." *Life Tech. Corp. v. AB Sciex Pte. Ltd.*, 803 F. Supp. 2d 270, 276 (S.D.N.Y. 2011) (citing *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 351-53 (2d Cir. 1999); *Thomson-CSF, S.A. v. Am. Arbiration Ass'n*, 64 F.3d 773, 778-79 (2d Cir. 1995); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1061-64 (2d Cir. 1993)).

Here, Plaintiffs assert that the "sole purpose of the Managing General Partner is to exploit the benefits from the Partnership for all of the Defendant entities" and that "Defendants" and "non-signatory Defendants" have profited in their respective capacities as "controllers, officers, managers, members, or affiliates of the Managing General Partner." Pls.' Resp. at 23. However, Plaintiffs' argument fails to go beyond these conclusory and general allegations with specific evidence to elucidate the manner in which each non-signatory either received a benefit or exploited benefits under the 2005A1 LPA thus justifying imposition of the estoppel doctrine. Accordingly, Plaintiffs have failed to show not only that the non-signatories received a benefit from the 2005A1 LPA but that any such benefit was either direct or indirect.

## V. Veil Piercing

Finally, Plaintiffs allege in their complaint that the Defendant entities comprise the alter ego(s) of Defendant Mannon L. Walters, individually, and that Mannon L. Walters's use of such entities is for the explicit purpose of perpetrating fraud and confusion. Plaintiffs thus maintain that Mannon L. Walters should be deemed individually bound to the arbitration agreement under a veil-piercing theory.

"'Piercing the corporate veil' is an equitable doctrine that depends on the circumstances in each case." *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 774 (7th Cir. 2013). In order to establish that a corporation is merely an alter ego, two showings must be made: "'first, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'" *Id.* (quoting *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1345 (7th Cir. 1987)). In other words, "piercing the corporate veil is appropriate if the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 936 (8th Cir. 2007) (citation and internal quotation marks omitted).

Without benefit of any specific supporting evidence based in the record, Plaintiffs contend that grounds for piercing the corporate veil exist, for the following reasons, which we have restated in part for reasons of clarity:

(a) Mannon L. Walters was the sole decision maker (manager, controller) and/or shareholder participant in all corporate or partnership affairs;

(b) the "shell" entities under his control were insolvent at the time of their creation;

(c) Mannon L. Walters obstructed transparency as to the business financials by, among other things, refusing to allow an independent audit;

(d) the "shells" failed to observe or otherwise comply with corporate formalities;

(e) the "shells" have not maintained legitimate corporate records;

(f) the "shell" are not paying financial distributions (except to Mannon L. Walters or his affiliates in the form of "fees"); and

(g) Mannon L. Walters is siphoning off corporate funds to which he has access as the dominate shareholder.

Pls.' Resp. at 20-21 (emphasis removed).

However, there has been no clear evidence adducted to show that the non-signatory entities are merely shell corporations or the alter ego of Mr. Walters. Plaintiffs fail to rebut the factual averments in Mr. Walters's affidavit as manager of Mannon Oil that Mannon Oil is a separate legal entity that maintains separate business operations. *See* Docket No. 118, Exhs. 10, 11, 12, and 13. In response, Plaintiffs have put forth only conclusory allegations which are insufficient to warrant our piercing the corporate veil. *See, e.g.*, *LDT Keller Farms, LLC v. Brigitte Holmes Lifestock, Co.*, 722 F. Supp. 2d 1015, 1031 (N.D. Ind. 2010) (recognizing that the burden rests with the party seeking to pierce the corporate veil and that piercing the corporate veil is a "highly fact-sensitive inquiry"). Plaintiffs' failure to establish a factual basis on which to pierce the corporate veil relieves Mr. Walters individually of any obligation arising under the 2005A1 LPA.

## **Conclusion**

For the reasons detailed above, we hold that, by having incorporated the AAA rules into each of the LPAs, the signatories to those contracts agreed to submit to the arbitrator any questions relating to arbitrability.  Thus, all issues raised by Defendant Mannon Oil in the instant motion are within the proper legal and factual purview of the arbitrator's powers and responsibilities.  However, Plaintiffs have failed to justify a basis for binding any of the non-signatory Defendants to the arbitration clause contained in the 2005A1 LPA; thus, those individuals/entities are beyond the arbitrator's jurisdiction and have no obligation to arbitrate Plaintiffs' claims.  Having resolved all pending issues raised by the instant motion, Defendants' Motion to Stay Arbitration is <u>DENIED AS MOOT</u>.  Plaintiffs and Defendant Mannon Oil are instructed to proceed with arbitration forthwith.

IT IS SO ORDERED.

Date:   ___11/20/2014_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Mark E. Maddox
MADDOX HARGETT & CARUSO, PC
mmaddox@mhclaw.com

Thomas K. Caldwell
MADDOX HARGETT & CARUSO, PC
tkcaldwell@mhclaw.com

Timothy John Kirk
MADDOX HARGETT & CARUSO, PC
kirktjohn@mhclaw.com

Edwin L. Sisam
SISAM & ASSOCIATES, LLP
ed@sisam.com

Joshua H. Sisam
SISAM & ASSOCIATES, LLP
josh@sisam.com

Patrick A. Shoulders
ZIEMER STAYMAN WEITZEL & SHOULDERS
pshoulders@zsws.com

Robert L. Burkart
ZIEMER STAYMAN WEITZEL & SHOULDERS
rburkart@zsws.com

Clay W. Havill
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
chavill@zsws.com

Jean Marie Blanton
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
jblanton@zsws.com